Filed 9/23/21  P. v. Taylor CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JERMAINE TAYLOR,<br><br>    Defendant and Appellant. | B306691<br><br>(Los Angeles County<br>Super. Ct. No. BA214317) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura C. Ellison, Judge.  Affirmed.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

We deem petitioner Jermaine Taylor's petition for writ of habeas corpus to be a petition for resentencing pursuant to Penal Code section 1170.95.[1] We affirm the trial court's order denying the petition to resentence Taylor on two counts of attempted murder. Section 1170.95 does not provide relief for defendants convicted of attempted murder.

## BACKGROUND

The following facts from the appellate opinion following the judgment of conviction are undisputed.

1. ***People v. Taylor et al.***

Taylor had tattoos suggesting that he was a member of the Crip gang and admitted membership in the Crip gang. (*People v. Taylor* (Nov. 25, 2002, B152885) [nonpub. opn.] (*Taylor I*).) The Crip gang was "at war" with the Hollyhood Bloods. (*Ibid.*)

On October 24, 1998, as Raymond Brown was leaving the house of a Hollyhood Bloods gang member, Taylor and his confederate, Terrell Curry, shot multiple times at Raymond Brown.

Sheriff's Deputies Jacob Sanchez and Jacob Scuoler heard the gunshots and followed Taylor, who was driving Curry in a Buick. Eventually Taylor spun out of control and turned to face the deputies' patrol car. "The deputies saw two muzzle flashes coming from the Buick as shots were fired at them. Both deputies returned fire. The Buick then began accelerating toward the deputies' patrol car. It passed the car and continued driving away. When it reached the intersection of Myrrh Street and Atlantic Avenue, it spun out of control again and crashed

---

[1] Undesignated statutory citations are to the Penal Code.

2

into a pole. When defendant Taylor was unable to drive it any further, he and defendant Curry got out of the Buick and began running down Atlantic Avenue." (*Taylor I*, *supra*, B152885.) Taylor left an Uzi assault rifle on the Buick's driver's seat.

Deputy sheriffs found seven casings near Brown's neighbor's house, two from an Uzi assault rifle. Investigators found 16 Uzi shell casings in the Buick.

## 2. *Taylor's conviction*

A jury convicted Taylor of assault with a semiautomatic firearm on Raymond Brown and of two counts of willful, deliberate, and premeditated attempted murder of a peace officer (deputies Jacob Sanchez and Terrence Scuoler). The jury also convicted Taylor of two counts of assault on a peace officer with a semiautomatic firearm. The jury also found Taylor guilty of possession of a firearm by a felon. The jury found true the allegations that Taylor was armed with an Uzi assault rifle and the allegations regarding the gang enhancement. The jury found true the allegation that Taylor personally and intentionally discharged a firearm in the assault. The jury, moreover, found true allegations that Taylor had suffered a prior serious felony conviction and a prior felony conviction for which he served a state prison term. The jury found not true the allegation that Taylor personally used or discharged a firearm in the commission of the attempted murders.

The trial court imposed sentence on October 23, 2002. In this court's opinion modifying and affirming the judgment, this court rejected Taylor's argument that he could not be vicariously liable for attempted premediated murder. We concluded, "[T]he trial court did not err in failing to instruct the jury that defendant personally had to deliberate and premeditate in order

3

to sustain the attempted murder convictions . . . ." (*Taylor I*, *supra*, B152885.)

### 3. *Taylor's petition for habeas corpus*

Using a standard form, Taylor filed a petition for writ of habeas corpus on May 21, 2020.  Taylor indicated that he was convicted of attempted murder.  In his grounds for relief, Taylor stated:  "Trial court imposed an illegal sentence and conviction of crime is now illegal."  (Some capitalization omitted.)  Taylor stated that he was convicted by a jury instructed on the natural and probable consequences doctrine.  Taylor cited Senate Bill No. 1437 as authority supporting relief.  In an argument section attached to the form habeas petition, Taylor stated:  "Recently Senate Bill 1437 was enacted and made changes to the Penal Code which says malice may not [be] imputed to a person solely based on his participation in a crime.  [¶]  In this instant case clear evidence supports petitioner was the driver of the vehicle where the passenger was the shooter . . . ."  (Some capitalization omitted.)

### 4. *Trial court order*

On June 2, 2020, the trial court denied Taylor's petition for writ of habeas corpus, indicating that an illegal sentence was not imposed.  Taylor timed appealed.

## DISCUSSION

We deem Taylor's petition for writ of habeas corpus to be a petition for resentencing pursuant to section 1170.95.  (Cf. *People v. Swanson* (2020) 57 Cal.App.5th 604, 610 [trial court construed petition for writ of habeas corpus to be section 1170.95 petition], review granted Feb. 17, 2021, S266262.)  Taylor's

4

petition relied on Senate Bill No. 1437 which added section 1170.95. The Attorney General suffers no prejudice from treating Taylor's petition as one pursuant to section 1170.95. Additionally, this court is in as a good a position as the trial court to resolve the determinative legal question—whether section 1170.95 encompasses convictions for attempted murder.

## A.    Background on Section 1170.95

To be convicted of murder, a jury must ordinarily find that the defendant acted with the requisite mental state, known as " 'malice aforethought.' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1181, quoting § 187, subd. (a).) Until recently, the felony murder rule provided an exception that made "a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state." (*Chun*, at p. 1182.) Also, until recently, the natural and probable consequences doctrine permitted a " ' "person who knowingly aids and abets [the] criminal conduct [of another person] is guilty of not only the intended crime . . . but also of any other crime the [other person] actually commits . . . that is a natural and probable consequence of the intended crime." ' [Citation.]" (*People v. Chiu* (2014) 59 Cal.4th 155, 161; see also *People v. Gentile* (2020) 10 Cal.5th 830, 845–846.)

Senate Bill No. 1437 (2017–2018 Reg. Sess.), which became effective January 1, 2019, raised the level of culpability required for murder liability to be imposed under a felony murder or natural and probable consequences theory. (See Stats. 2018, ch. 1015, § 1, subd. (f).) The bill amended section 189, which defines the degrees of murder, to limit murder liability based on felony murder or a natural and probable consequences theory for a person who: (1) was the actual killer; (2) though not the actual

5

killer, acted "with the intent to kill" and "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer" in the commission of first degree murder; or (3) was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).) Senate Bill No. 1437 also amended the definition of malice in section 188 to provide that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) In addition to amending sections 188 and 189, the Legislature enacted section 1170.95. (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019.) That provision authorizes a person convicted of felony murder or murder under a natural and probable consequences theory to file with the sentencing court a petition to vacate the conviction and be resentenced. (§ 1170.95, subd. (a).)

**B.    Section 1170.95 Does Not Apply to This Case Because Taylor Was Not Convicted of Murder**

We assume without deciding that the trial court should have appointed counsel to represent Taylor. (See *People v. Lewis* (2021) 11 Cal.5th 952, 962–963 [petitioner's right to counsel attaches upon filing of facially valid resentencing petition].) This assumed error did not prejudice Taylor. (See *Lewis*, at pp. 973–974 [denial of statutory right to counsel evaluated under standard of prejudice described in *People v. Watson* (1956) 46 Cal.2d 818].)

Taylor is ineligible for resentencing as a matter of law. Although there are cases prospectively applying the new murder definitions in sections 188 and 189 to attempted murder, we have found no case holding that a defendant convicted of attempted murder is eligible for resentencing under section 1170.95. (See,

6

e.g., *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1104–1107, review granted Nov. 13, 2019, S258175; *People v. Larios* (2019) 42 Cal.App.5th 956, 969–970, review granted Feb. 26, 2020, S259983; *People v. Love* (2020) 55 Cal.App.5th 273, 292, review granted Dec. 16, 2020, S265445; *People v. Alaybue* (2020) 51 Cal.App.5th 207, 222–223.)  The plain language of the statute permits resentencing for murder only.  It states "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition" for resentencing.  (§ 1170.95, subd. (a).)  Further, the petitioner must have been "convicted of first degree or second degree murder . . . ."  (§ 1170.95, subd. (a)(2).)  On its face, the statute does not apply to convictions for attempted murder.  Contrary to Taylor's argument, the statute is not ambiguous.

Pending guidance from our high court, we agree with the authority holding that section 1170.95 does not apply to attempted murder.  We also agree with the conclusion that there "is a rational basis for the Legislature's decision to grant relief pursuant to section 1170.95 only to murder convictions and exclude attempted murder convictions based on judicial economy and the financial costs associated with reopening both final murder and final attempted murder convictions."  (*People v. Larios*, *supra*, 42 Cal.App.5th at p. 970, review granted; see also *People v. Lopez*, *supra*, 38 Cal.App.5th at pp. 1111–1113, review granted.)  Additionally, "[b]ecause the punishment for murder is so much more severe than the punishment for attempted murder, the Legislature may have wished to limit Senate Bill 1437's ameliorative reforms to those instances where it perceived the disconnect between culpability and punishment to be most glaring.  It is not our place to judge the wisdom, fairness, or logic

7

of the Legislature's decision to omit attempted murder from Senate Bill 1437's ambit.  We do not find the plain meaning of Senate Bill 1437 to be absurd, much less so absurd in its results that we would be permitted to disregard the literal language used in the statute." (*People v. Alaybue*, *supra*, 51 Cal.App.5th at p. 225.)

Taylor's reliance on Civil Code section 3536 does not compel a different result.  That statute provides:  "The greater contains the less."  (Civ. Code, § 3536.)  Taylor, however, fails to show that the Civil Code statute applies to override the plain meaning of section 1170.95, a statute in the Penal Code.  Taylor's reliance on *In re R.G.* (2019) 35 Cal.App.5th 141 also is misplaced because the *R.G.* court considered whether section 1170.95 applied to a juvenile convicted of murder on a natural and probable consequences theory.  (*R.G.*, at p. 144.)  The *R.G.* court did not consider whether section 1170.95 applied to attempted murder.  In sum, Taylor, who suffered two attempted murder convictions, was not eligible for resentencing.[2]

---

[2] We are aware that Senate Bill No. 775 (2021–2022 Reg. Sess.), if enacted, would amend section 1170.95 to permit persons convicted of attempted murder under a theory of felony murder or natural and probable consequences to obtain resentencing relief.

## DISPOSITION

Taylor's petition for writ of habeas corpus is deemed a petition for resentencing pursuant to Penal Code section 1170.95. The order denying the petition is affirmed.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

CHANEY, J.

CRANDALL, J.*

---

&#42; Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.